JOSEPH W. OZMER II (*pro hac vice*)
jozmer@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

J. SCOTT CARR (SBN 136706)
scarr@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
515 S, Flower Street, 36th Floor
Los Angeles, CA 90071
Telephone: (213) 493-3980
Facsimile: (404) 400-7333

*Attorneys for Defendants Time Warner Cable Inc. and TWC Administration LLC*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOIS A. MANIGO, ORLANDO GUTIERREZ, PHILIP MARTINEZ, PATRICIA VALLADARES-GALLEGOS, SHANA GILMORE, and WARREN V. NICHOLS, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TIME WARNER CABLE, INC. and TWC ADMINISTRATION LLC,<br><br>Defendants. | CASE NO.: 2:16-cv-06722-JFW-PLA<br><br>Judge John F. Walter (Courtroom 7A)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>[*Notice of Motion and Motion; Separate Statement of Uncontroverted Facts and Conclusions of Law; Separate Document of Deposition Cites; Declarations of Joseph W. Ozmer II with Exhibits, Nadine Solis, and Dyah Salino with Exhibits*]<br><br>Date: September 25, 2017<br>Time: 1:30 p.m.<br>Place: Courtroom 7A<br><br>Pretrial Conference: October 27, 2017<br>Trial Date: November 14, 2017 |

# TABLE OF CONTENTS


I. Introduction ..... 1

II. UNDISPUTED MATERIAL FACTS ..... 3

A. Plaintiffs Abandoned the Overtime Theory Set Forth in the Complaint ..... 3

B. TWC Did Not Suffer or Permit Pre- or Post Shift Off-the-Clock Work ..... 4

C. There Is No Evidence Showing Meal or Rest Break Liability ..... 5

1. TWC Ensured Plaintiffs Had the Opportunity to Take Timely Breaks ..... 5

2. Undisputed Facts Show Plaintiffs Took Their Meal and Rest Breaks ..... 6

3. The Evidence Cannot Support a Finding That Any Late Breaks Were Due to the Lack of an Opportunity for a Timely Break ..... 6

4. TWC Pays the Appropriate Penalty When It Is Aware That an Employee Lacked the Opportunity for a Proper Break. ..... 10

III. Argument and Citation to Authority ..... 11

A. Summary Judgment Standard ..... 11

B. Plaintiffs' Claim for Unpaid Overtime Fails as a Matter of Law ..... 11

1. Plaintiffs Cannot Oppose Summary Judgment With a Theory Not Set Forth in Their Complaint ..... 11

2. Plaintiffs' Unalleged Pre- and Post-Shift Off-the-Clock Overtime Theory Fails Because TWC Did Not Suffer or Permit Such Work ..... 12

C. Plaintiffs' Rest and Meal Break Claims Fail as a Matter of Law ..... 14

1. TWC Was Obligated Only to Provide a Reasonable Opportunity for Proper Breaks, Not Ensure Plaintiffs Timely Took Them ..... 14

2. Undisputed Facts Show TWC Met Its Obligation to Provide a Reasonable Opportunity for Timely and Proper Meal and Rest Breaks ..... 16

3. Plaintiffs' "Heavy Call Volume" Theory Cannot Create a Genuine Dispute of Fact ..... 17

**4.** TWC's Payment of Premiums Where the Opportunity For a Timely Break Was Not Provided Defeats All of Plaintiffs' Arguments ........ 21

**D.** Plaintiffs' Derivative Claims Fail ........ 23

**E.** Plaintiffs' PAGA Claim Also Fails on Procedural Ground ........ 23

IV. Conclusion ........ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amey v. Cinemark USA Inc.*,
No. 13-cv-05669, 2015 WL 2251504 (N.D. Cal. May 13, 2015) .......................... 22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................ 11

*Brinker Rest. Grp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ........................ 12, 14, 17, 20

*Caliber Bodyworks, Inc. v. Superior Court*,
134 Cal. App. 4th 365, 36 Cal. Rptr. 3d 31 (2005) ............................................. 24

*Cleveland v. Groceryworks.com, LLC*,
200 F. Supp. 3d 924 (N.D. Cal. 2016) ................................................................. 19

*Cole v. CRST. Inc.*,
No. 08-cv-1570-VAP-SP, 2017 WL 1234215 (C.D. Cal. Mar. 30, 2017) ................................................................................................................ 19

*Harris Tech. Sales, Inc. v. Eagle Test Sys., Inc.*,
No. 06-2471-PHX-RCB, 2008 WL 343260 (D. Ariz. 2008) ................................ 12

*Jasper v. C.R. England, Inc.*,
No. 08–cv–5266–GW–CWX, 2012 WL 7051321 (C.D. Cal. Aug. 30, 2012) ................................................................................................................ 23

*Jones v. Spherion Staffing LLC*,
No. LA CV11-0642 JAK, 2012 WL 3264081 (C.D. Cal. Aug. 7, 2012) ................................................................................................................ 23

*Morales v. Compass Group, PLC*,
No. CV 13–9231–JFW, 2014 WL 5304913 (C.D. Cal. Oct. 16, 2014) ................. 11

*Novoa v. Charter Commc'ns*,
100 F. Supp. 3d 1013 (E.D. Cal. 2015) ............................................................... 19

*Ordonez v. Radio Shack, Inc.*,
No. CV 10-7060-CAS-JCGX, 2013 WL 210223 (C.D. Cal. Jan. 17, 2013) ................................................................................................................ 15

*Ortiz v. CVS Caremark Corp.*,
No. C-12-05859, 2014 WL 1117614 (N.D. Cal. Mar. 19, 2014) .......................... 12

*Palazzolo v. Childrens Hosp. Los Angeles*,
No. B216508, 2010 WL 4869755 (Cal. Ct. App. Dec. 1, 2010) .......................... 22

*Paxton v. City of Montebello*,
712 F. Supp.2d 1007 (C.D. Cal. 2010) .......................... 12

*Perez v. Safety-Kleen Systems, Inc.*,
253 F.R.D. 508 (N.D. Cal. 2008) .......................... 20

*Perez v. Safety-Kleen Systems, Inc.*,
No. 1:13-cv-01438-LJO, 2013 WL 6198944 (E.D. Cal. Nov. 27, 2013) .......................... 20

*Pickern v. Pier 1 Imports, Inc.*,
457 F.3d 963 (9th Cir. 2006) .......................... 11, 12

*Plaisted v. Dress Barn Inc.*,
No. 2:12-cv-01679-ODW, 2013 WL 300913 (C.D. Cal. Jan. 25, 2013) .......................... 19

*Porch v. Masterfoods, USA, Inc.*,
685 F. Supp.2d 1058 (C.D. Cal. 2008) .......................... 12, 14, 22

*Raphael v. Tesoro Refining and Mktg. Co. LLC*,
No.2:15-cv-02862, 2015 WL 5680310 (C.D. Cal. Sept. 25, 2015) .......................... 24

*Reece v. Unitrin Auto and Home Ins. Co.*,
NO. 5:11-CV-03960 EJD, 2013 WL 245452 (N.D. Cal. Jan. 22, 2013) .......................... 14, 20

*Rodriguez v. Old Dominion Freight Line, Inc.*,
Case No. 13–cv–891–DSF–RZX, 2013 WL 6184432 (C.D. Cal. Nov. 27, 2013) .......................... 23

*Silva v. AvalonBay Cmtys., Inc.*,
No. LA CV15-04157, 2016 WL 4251600 (C.D. Cal. Apr. 20, 2016) .......................... 15

*Soto v. Castlerock Farming and Transp. Inc.*,
No. CIV-F-09-0701 AWI JLT, 2012 WL 1292519 (E.D. Cal. Arp. 16, 2012) .......................... 24

*Summers v. Teichert & Son, Inc.*,
127 F.3d 1150 (9th Cir. 1997) .......... 11

*Torres v. City of Madera*,
655 F. Supp. 2d 1109 (E.D. Cal. 2009) .......... 12

*Villa v. Tyco Elecs. Corp.*,
No. 10-cv-00516, 2011 WL 62232 (N.D. Cal. Jan. 7, 2011) .......... 12

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006) .......... 11

*White v. Starbucks Corp.*,
497 F. Supp. 2d 1080 (N.D. Cal. 2007) .......... 20

**Statutes**

Cal. Labor Code § 2699.3 (a)(1)(A) .......... 23

Cal. Labor Code § 2699.3 (a)(2)(A) .......... 24

**Other Authorities**

Fed. R. Civ. P. 56(a) .......... 11

## I. INTRODUCTION

Shortly after Defendant TWC Administration LLC ("TWC") fired Plaintiffs from their dispatcher jobs for hanging up on incoming phone calls, Plaintiffs filed this lawsuit. Plaintiffs' Complaint alleges they were required to spend their entire workday at their desks, and thus worked through their meal and rest breaks, resulting in both unpaid overtime and meal/rest break violations. In the face of evidence proving Plaintiffs virtually always took one-hour meal breaks and two 15-minute rest breaks every day, they morphed their claims to: (1) pursue a new, *unalleged* theory for off-the-clock work prior to and after their shifts; and (2) focus only on the timeliness of their breaks. As shown below, Plaintiffs' claims all fail as a matter of law.

With respect to the *unalleged* pre- and post-shift off-the-clock overtime theory on which they seek to proceed, Plaintiffs cannot oppose summary judgment with a theory not plead in the Complaint. The Court already recognized in its Order denying class certification that Plaintiffs' Complaint gives no hint of any theory based on pre- or post-shift off-the-clock work. Further, even after the Court's holding on that issue, Plaintiffs did not seek leave to amend their Complaint to assert that theory. Thus, Plaintiffs' unalleged pre- and post-shift off-the-clock claim fails at the very threshold.

Moreover, even if the Court were to entertain Plaintiffs' unalleged theory, it still fails because undisputed facts show TWC did not suffer or permit such work. To the contrary, TWC's policies prohibit off-the-clock work, and there is no evidence that TWC was aware that Plaintiffs violated those policies. In fact, half of the Plaintiffs admit they were not working off the clock at all, much less with the knowledge of TWC, while others admit their supervisors were not present when this work allegedly occurred (and thus would have no reason to be aware of it).

Plaintiffs' meal and rest break claims fare no better. First, undisputed facts prove TWC provided Plaintiffs the opportunity for proper, timely breaks. In fact, Plaintiffs concede that TWC's meal and rest break policies are lawful. Undisputed facts also prove TWC properly enforced those policies by, among other things:

- Properly scheduling Plaintiffs' breaks;
- Requiring breaks be taken away from the work area to ensure no work was done;
- Using a phone system designed to prevent employees from receiving incoming calls as their breaks approached;
- Incentivizing break compliance by using schedule adherence as a bonus metric;
- Repeatedly telling Plaintiffs they **must** comply with their break schedules; and
- Repeatedly coaching Plaintiffs when they did not comply with their schedules.

These measures were successful, as Plaintiffs admit they almost always took their breaks. In fact, *Plaintiffs took far longer breaks than the 30-minute lunch and two 10-minute rest breaks required by law*. Further, to the extent any breaks were untimely, undisputed facts destroy any notion that Plaintiffs lacked the *opportunity* for a timely break. Indeed, Plaintiffs' excuse that they took untimely breaks due to "heavy call volume" defies TWC's policies and their supervisors' instructions, and the law does not permit Plaintiffs to manufacture liability by choosing to violate TWC's directives. Allowing Plaintiffs to proceed under such facts would, in effect, impose the mandatory "break policing" requirement the California Supreme Court rejected in *Brinker*.

Second, the undisputed fact that TWC pays the appropriate premium in the (rare) event that an employee actually lacks the opportunity for a proper break provides an additional ground for summary judgment. To facilitate that policy, dispatchers were supposed to inform management if they were unable to take a proper break. TWC further implemented this policy by programming its Kronos timekeeping system to *automatically* add the premium if a Plaintiff did not take a meal break within the first five hours of the shift. As a result of these policies and practices, TWC paid El Segundo dispatchers (including Plaintiffs) 1518 break penalties during the relevant period. Given these facts, it is not surprising that there is no evidence of even a single instance where a Plaintiff lacked the opportunity for a proper break, yet TWC did not make the penalty payment. Further, there is certainly no evidence that a Plaintiff complied with the duty to report a break violation, yet TWC failed to pay the premium despite that knowledge.

Summary judgment is proper on these grounds, as well.[1]

Finally, Plaintiffs' derivative PAGA claim fails not only for the reasons above, but also because they did not comply with the statutory prerequisites to suit, as they failed to: (1) electronically file their PAGA claim with the Labor and Workforce Development Agency ("LWDA"); and (2) wait 60 days before filing suit.

Accordingly, TWC respectfully requests that the Court grant TWC's motion for summary judgment, dismissing all of the claims of each Plaintiff, with prejudice.

## II. UNDISPUTED MATERIAL FACTS

### A. Plaintiffs Abandoned the Overtime Theory Set Forth in the Complaint

The Complaint's only allegations as to uncompensated time are based on the allegation that "heavy call volume" ***during the workday*** forced Plaintiffs to remain at their desks for the entirety of their shifts, working through uncompensated meal periods. (Compl. (D.E. 1) ¶ 24-26.) As shown below, there is no merit to that claim, as it is undisputed that Plaintiffs took their meal breaks and did not remain at their desks all day.[2] Because their alleged unpaid overtime claim is baseless, Plaintiffs now pursue the *unalleged* theory that they worked off the clock prior to and after their shifts. (*See, e.g.*, Plaintiffs' Motion for Class Certification ("Mot."), D.E. 49-1 at 7:12.) Notably, the Complaint does not mention pre- or post- shift work.[3] Thus, as the Court recognized in denying class certification, the Complaint "provides no hint that the grounds upon which the claims rests' is a purported requirement that dispatchers work off the clock before or after their shifts." (D.E. 73 at 6.) Likewise, Plaintiffs' portions of the Joint Rule 26(f) Scheduling Conference Report do not suggest any such theory. (D.E.17.) Further, in the 13 months since Plaintiffs filed their Complaint, and in the four months

---

[1] Plaintiffs admit their other claims are derivative of their underlying meal/rest break and overtime claims and fail if the underlying claims fail. (D.E. 49 at 10:22.)

[2] SUF ¶ 2.

[3] SUF ¶ 1.

since the Court held that Plaintiffs' new theory is not encompassed by that Complaint, Plaintiffs have never moved to amend the Complaint to allege their new theory.

## B. TWC Did Not Suffer or Permit Pre- or Post Shift Off-the-Clock Work

TWC policy dictates that dispatchers are not permitted to work "off the clock" (i.e., work without recording all time worked).[4] Further, it would be a violation of TWC policy for anyone to instruct or encourage any non-exempt employee to work off the clock.[5] Thus, as various Plaintiffs admit, dispatchers are not instructed to arrive early or to load programs or perform other tasks off the clock.[6]

Moreover, no Plaintiff can provide evidence that TWC knew or should have known he or she was working off the clock in violation of TWC policy, yet failed to compensate him or her. In fact, contrary to Plaintiffs' unalleged theory, Manigo Martinez and Nichols did not even work off the clock in the morning. Indeed, Manigo confirmed that Plaintiffs were ***required*** to clock into Kronos before loading other programs, while Nichols stated that he too clocked into Kronos before loading other programs and that clocking in was the "main emphasis" in the morning.[7] Martinez also complied with this rule, and further confirmed that he closed Kronos last at the end of the day,[8] thus he was not working off the clock at that time, either.

Further, Plaintiffs Manigo, Gutierrez and Nichols also admitted their supervisors were not present at the start of the shift,[9] and thus would not have been in a position to know they were working off the clock even assuming it occurred. Lastly, there is no dispute that TWC provided a means for Plaintiffs to be paid for work they did not

---

[4] SUF ¶ 3.

[5] SUF ¶ 4.

[6] SUF ¶¶ 5-6.

[7] SUF ¶ 7.

[8] SUF ¶ 9-10.

[9] SUF ¶ 11.

record, as they all admitted that supervisors adjust and correct time when they are made aware of an issue that caused work to be done off the clock.[10]

## C. <u>There Is No Evidence Showing Meal or Rest Break Liability</u>

### 1. *TWC Ensured Plaintiffs Had the Opportunity to Take Timely Breaks*

Plaintiffs conceded in their Certification Motion that TWC's rest and meal break policies are lawful. (D.E. 49-1 at 1:19-3:10, 4:3-10, 8:12-18.) Further, the undisputed facts below – primarily Plaintiffs' own admissions – show TWC's extensive efforts to enforce its policies and ensure Plaintiffs had the opportunity to take proper breaks.

- Supervisors properly scheduled rest and meal breaks for their dispatchers; setting the first rest break for approximately 2 hours into the shift, lunch within the first 5 hours of the shift, and a second rest break approximately 2 hours after returning from lunch;[11]
- To facilitate timely breaks, TWC instructs dispatchers to enter the "break" or "lunch" auxiliary code ("AUX code") into the phone system as their break is approaching, preventing further calls from coming to that dispatcher;[12]
- Supervisors staggered the dispatchers' break schedules to ensure adequate coverage of the phones and thus facilitate compliance with the schedule;[13]
- TWC enforced its lawful meal/break policies not only by monitoring each dispatcher's adherence to their schedule, but also by reminding (and coaching) dispatchers when they delayed a scheduled break;[14]

---

[10] SUF ¶ 12.

[11] SUF ¶ 13.

[12] SUF ¶ 14.

[13] SUF ¶ 15.

[14] SUF ¶ 16.

- TWC created a financial incentive for timely breaks by implementing a bonus system which rewards, *inter alia*, the dispatcher's schedule adherence;[15]
- TWC instructs dispatchers not to work during meal or rest breaks; to facilitate that rule, dispatchers must take their breaks outside of the dispatch area.[16]

### 2. *Undisputed Facts Show Plaintiffs Took Their Meal and Rest Breaks*

Undisputed facts show that TWC's substantial efforts to provide the opportunity for proper breaks were successful, as documentary evidence and Plaintiffs' own admissions prove they took their meal and rest breaks. Indeed, contrary to the Complaint's allegations, ***five of the six Plaintiffs could not recall any occasion on which they actually missed their lunch break***.[17] Further, there is no dispute that during an eight-hour shift Plaintiffs were scheduled for, and virtually always took, *two rest breaks totaling more than 30 minutes*, even though the law requires only 20 minutes of rest-break time (two 10-minute breaks).[18] It is also beyond dispute that Plaintiffs were scheduled for, and virtually always took, *more than 30 minutes for lunch every day*.[19] In fact, ***every Plaintiff was repeatedly coached for spending more than 30 minutes per day on rest breaks and/or more than one-hour per day on meal breaks***.[20]

### 3. *The Evidence Cannot Support a Finding That Any Late Breaks Were Due to the Lack of an Opportunity for a Timely Break*

Undisputed facts further show that, to the extent Plaintiffs' took any breaks later than contemplated by California law, it was not for lack of a reasonable opportunity to take a timely break. In fact, notwithstanding their assertion that "heavy call volume"

---

[15] SUF ¶ 17.

[16] SUF ¶ 18.

[17] SUF ¶ 19.

[18] SUF ¶ 20.

[19] SUF ¶ 21.

[20] SUF ¶ 22.

sometimes left them too busy to take timely breaks, Plaintiffs universally admit that management told them they ***must*** comply with their break schedules nonetheless.[21] As shown below, Plaintiffs disregarded that directive, as well as TWC's lawful policies, and instead engaged in practices where they did not always avail themselves of the opportunity TWC provided for timely breaks.

**Plaintiff Gutierrez:** Gutierrez's admissions show that any late breaks he took were *not* due to lack of opportunity, but to his own choices, as he admitted that:

- Although supervisors stressed the importance of adhering to the break schedule, and no supervisor ever told him to take a break later than scheduled, *he chose to take breaks based on "coverage," rather than his schedule*;[22]
- He sometimes did not take breaks despite his supervisor's directive to do so;[23]
- He never told anyone he was entitled to a break penalty he did not receive;[24]
- He complained, *not* about late breaks, but that his meal break was *too early*.[25]

**Plaintiff Gilmore:** Undisputed facts refute any notion that Gilmore lacked the opportunity for timely breaks:

- She knew that TWC policy required her to take a timely lunch break;[26]
- TWC was "***strict***" about requiring adherence to the break schedule;[27]
- To that end, there was a "***directive***" to comply with break schedules;[28]

---

[21] SUF ¶ 23.

[22] SUF ¶ 24.

[23] SUF ¶ 25.

[24] SUF ¶ 26.

[25] SUF ¶ 27.

[26] SUF ¶ 28.

[27] SUF ¶ 29.

[28] SUF ¶ 30.

- She was evaluated, coached and bonused based on adherence to her schedule;[29]
- Her supervisors coached her for taking too much time on her rest breaks;[30]
- Despite these policies, *she chose to take breaks late because she felt there were too many calls coming in*.[31]

**<u>Plaintiff Manigo</u>:** Undisputed facts show that, through choice and inefficiency, Manigo failed to avail herself of the opportunity for timely breaks. For example, she:

- Complained that her meal break was *too early*;[32]
- Was coached to stop taking late lunches;[33]
- Was coached to avoid missing her break times due to "personal matters"; [34]
- Was coached for her failure to manage her breaks and phone effectively;[35]
- Was scheduled for training to learn how to better manage her day;[36] and
- Was coached to stop using her personal phone and surfing the internet during her work time, minimize her "playing around" and "talking to others," and to make better use of her downtime between calls.[37]

**<u>Plaintiff Nichols</u>:** Like Gutierrez, Nichols's admissions show that any late breaks he took were *not* due to lack of opportunity, but his own choices.

- Management told him that he must comply with his break schedule;[38]

---

[29] SUF ¶ 31.

[30] SUF ¶ 32.

[31] SUF ¶ 33.

[32] SUF ¶ 34.

[33] SUF ¶ 35.

[34] SUF ¶ 36.

[35] SUF ¶ 37.

[36] SUF ¶ 38.

[37] SUF ¶ 39-41.

[38] SUF ¶ 42.

- He was formally coached, in writing, to stick to his break schedule;[39]
- He never saw a document suggesting he could delay his breaks due to work;[40]
- When a supervisor noticed him at his desk when he was supposed to be on break, the supervisor told him to take his break;[41]
- He was coached for surfing the internet during work time;[42]
- *Like Gutierrez, rather than comply with his schedule, Nichols would observe the floor and make his own determination as to when to take his breaks based on his own assessment of "coverage,"* even though he also admits the purpose of the schedule was coverage and that coverage was not his job.[43]

**Plaintiff Valladares-Gallegos:** Gallegos admitted the following facts showing she failed to comply with break policy and failed to effectively manage her time:

- Management stressed and emphasized the importance of timely breaks;[44]
- Management monitored her adherence to her schedule, coached her regarding same, and would "ding" her if she missed her break by 15 minutes or more;[45]
- She was repeatedly coached for failing to adhere to her schedule;[46]
- She was coached to better manage her phone and break time;[47] and
- She was counseled for mismanaging her time by playing games on her cell phone

---

[39] SUF ¶ 43.

[40] SUF ¶ 44.

[41] SUF ¶ 45.

[42] SUF ¶ 46.

[43] SUF ¶ 47-48.

[44] SUF ¶ 49.

[45] SUF ¶ 50.

[46] SUF ¶ 51.

[47] SUF ¶ 52.

and helping her husband rather than tending to her own team.[48]

**Plaintiff Martinez:** Martinez's admissions establish that he too was aware that being "busy" was not a valid reason to take an untimely break. For example, he admits:

- He was told he must comply with his break schedule, and was evaluated and coached on his adherence to that schedule;[49]
- If he was late for his meal or rest break, his supervisor would tell him to go.[50]

Notably, Martinez further acknowledged that his reference to a "late" lunch means later than scheduled[51] (which is not necessarily the same as later than five hours).

**4. *TWC Pays the Appropriate Penalty When It Is Aware That an Employee Lacked the Opportunity for a Proper Break.***

It is undisputed that TWC's policy is to pay employees one-hour of additional pay if TWC fails to provide the opportunity for a timely or proper meal or rest break.[52] Indeed, *El Segundo dispatchers – including Plaintiffs – received a total of 1518 of these premium payments* during the time period relevant to this case.[53] For example, Plaintiff Manigo received nine penalties during a single pay period in December, 2014.[54] In fact, it is undisputed that TWC's timekeeping system *automatically* added the meal penalty if a Plaintiff did not clock out for lunch by the end of their fifth hour of work.[55]

Dispatchers are required to inform management if they cannot adhere to their schedule, including the reason for any noncompliant break.[56] Notably, there is no

---

[48] SUF ¶¶ 53-54.

[49] SUF ¶ 55.

[50] SUF ¶ 56.

[51] SUF ¶ 57.

[52] SUF ¶ 58.

[53] SUF ¶ 59.

[54] SUF ¶ 59.

[55] SUF ¶ 60.

[56] SUF ¶ 61.

evidence in this case of any occasion where a Plaintiff complied with his or her duty to inform management that he or she lacked the opportunity to take a legally compliant meal or rest break, yet TWC did not pay the appropriate premium.

## III. ARGUMENT AND CITATION TO AUTHORITY

### A. Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if the evidence would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A "mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997); *see also, e.g. Morales v. Compass Group, PLC,* No. CV 13–9231–JFW, 2014 WL 5304913 at *3-4 (C.D. Cal. Oct. 16, 2014) (setting forth Rule 56 standard).

### B. Plaintiffs' Claim for Unpaid Overtime Fails as a Matter of Law

#### 1. *Plaintiffs Cannot Oppose Summary Judgment With a Theory Not Set Forth in Their Complaint*

As shown in Section II(A) above, this Court already held that the Complaint provides no hint of the overtime theory they now seek to pursue. TWC is therefore entitled to summary judgment on Plaintiffs' overtime claim, as the Ninth Circuit (and other courts) have consistently held that plaintiffs may not resist summary judgment by relying on a theory not raised in their complaint. *See, e.g., Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings").

For example, in *Pickern v. Pier 1 Imports, Inc.*, the Ninth Circuit held that the district court properly rejected theories the plaintiff asserted in response to summary judgment because Rule 8 "requires that the allegations in the complaint 'give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" 457 F.3d 963, 968-69 (9th Cir. 2006). *See also Torres v. City of Madera*, 655 F. Supp. 2d 1109, 1128 (E.D. Cal. 2009), rev'd on other grounds, 648 F.3d 1119 (9th Cir. 2011) ("a plaintiff cannot raise a new theory of liability in the plaintiff's opposition to a motion for summary judgment"); *Villa v. Tyco Elecs. Corp.*, No. 10-cv-00516, 2011 WL 62232, at * 4 *(N.D. Cal. Jan. 7, 2011)* ("[P]laintiff is bound by the allegations in his FAC, and cannot rely on new theories to avoid summary judgment"); *Paxton v. City of Montebello,* 712 F. Supp.2d 1007, 1011 n.8 (C.D. Cal. 2010) ("to the extent plaintiffs . . . contest summary judgment on the ground City did not promptly reemploy them in violation of USERRA . . . they cannot do so since they do not raise this issue in their complaint"); *Harris Tech. Sales, Inc. v. Eagle Test Sys., Inc.,* No. 06-2471-PHX-RCB, 2008 WL 343260, *17 (D. Ariz. 2008) (plaintiff cannot oppose summary judgment with theories not set forth in complaint).

Accordingly, because Plaintiffs cannot oppose summary judgment with their unalleged pre- and post-shift off-the-clock work theory, TWC is entitled to summary judgment on Plaintiffs' claim for unpaid overtime.

### 2. *Plaintiffs' Unalleged Pre- and Post-Shift Off-the-Clock Overtime Theory Fails Because TWC Did Not Suffer or Permit Such Work*

Even if the Court were to consider Plaintiffs' unalleged claim for pre- and post-shift off-the-clock work, that theory would still fail because there is no evidence TWC knew or should have known of the allegedly uncompensated work, but nonetheless permitted and failed to pay for it. Importantly, "***[T]hat employees are clocked out creates a presumption they are doing no work, a presumption [plaintiffs] . . . have the burden to rebut***." *Brinker Rest. Grp. v. Super. Ct.,* 53 Cal. 4th 1004, 1051-52 (2012) (emphasis added). Even if Plaintiffs could rebut that presumption, they then must provide evidence that TWC knew they were working off the clock. *See Ortiz v. CVS Caremark Corp.*, No. C-12-05859, 2014 WL 1117614 at *4 (N.D. Cal. Mar. 19, 2014); *Porch v. Masterfoods, USA, Inc.,* 685 F. Supp.2d 1058, 1065 (C.D. Cal. 2008) (citing,

*e.g.*, *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 585, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000)). Plaintiffs cannot present such evidence.

As an initial matter, several of the Plaintiffs' admissions establish that they were not working off the clock at all, much less with TWC's knowledge. For example, both Manigo and Nichols testified that they logged into the Kronos timekeeping system *first*, before loading other programs.[57] Thus they could not have been loading the other programs off the clock. Likewise, Martinez admitted he logged into Kronos first, and closed it last at the end of the day.[58] Thus, he was not working off the clock when he loaded and closed other programs. These Plaintiffs apparently followed TWC's mandate forbidding off-the-clock work. Thus, these Plaintiffs cannot even rebut the presumption that they were *not* working off the clock, much less show that TWC should have been aware of that work (that did not occur).

Additionally, no Plaintiff can provide evidence that TWC knew or should have known they were working off the clock, yet failed to compensate them for same. There is no evidence that any supervisor knowingly permitted any Plaintiff to violate TWC's strict policy forbidding off-the-clock work. In fact, the undisputed facts are to the contrary, as Plaintiffs admitted all of the following:

- TWC provided a means to be paid for work that was not initially recorded, as every Plaintiff admitted that supervisors adjusted and corrected time if some issue caused work to be performed when they were not clocked in;[59]
- Several plaintiffs testified that their supervisors were not present at the start of the shift,[60] thus they would not have known of any unrecorded pre-shift work;
- Dispatchers are not instructed to be early or to load programs or perform other

---

[57] SUF ¶ 7-8.

[58] SUF ¶ 9.

[59] SUF ¶ 12.

[60] SUF ¶ 11.

tasks off the clock.[61]

Under these circumstances, courts routinely find that employers have not suffered or permitted the alleged off-the-clock work, and thus enter summary judgment for the employer on overtime claims. *Porch,* 685 F. Supp. 2d at 1066-69 (granting summary judgment on overtime claim where employer did not have actual or constructive knowledge that employee was working off clock and employer did not encourage employee to do so); *Reece v. Unitrin Auto and Home Ins. Co.,* No. 5:11-CV-03960 EJD, 2013 WL 245452, at *4-5 (N.D. Cal. Jan. 22, 2013) (granting summary judgment where employee lacked evidence that employer had actual or constructive knowledge of off-the-clock work). Thus, summary judgment is appropriate on this ground, as well.

## C. Plaintiffs' Rest and Meal Break Claims Fail as a Matter of Law

Plaintiffs' meal and rest break claims fail as a matter of law because undisputed facts show that TWC provided Plaintiffs with a reasonable opportunity to take proper breaks, and paid the appropriate premium on all occasions where TWC was aware that any Plaintiff did not have that opportunity. Indeed, not a single Plaintiff can provide any evidence of even a single break they lacked a reasonable opportunity to take in a timely manner, but TWC failed to pay the premium.

### 1. *TWC Was Obligated Only to Provide a Reasonable Opportunity for Proper Breaks, Not Ensure Plaintiffs Timely Took Them*

With respect to meal breaks, it is black-letter California law that, while employers must provide employees a "reasonable opportunity to take an uninterrupted 30-minute break" and not "impede or discourage them from doing so," ***employers are not "obligated to police meal breaks and ensure no work thereafter is performed***." *Brinker Rest. Grp. v. Super. Ct.,* 53 Cal. 4th 1004, 1040 (2012) (emphasis added). Rest

[61] SUF ¶ 5-6.

breaks are also governed by a "reasonable opportunity" standard, albeit with more flexibility as to timing. That is, "employers [have] a duty to make a good faith effort to authorize and permit rest breaks in the middle of each work period, but may deviate from that preferred course where practical considerations render it infeasible." *Id.* at 1031 (noting statute requires that rest breaks occur in middle of each work period "insofar as practicable."). Thus, while TWC was required to provide Plaintiffs a reasonable opportunity to take their required breaks (an obligation TWC met), ***TWC had no duty to police those breaks and ensure that Plaintiffs actually took them at all, much less on time***.

Accordingly, Plaintiffs cannot show a material dispute of fact merely by pointing to time records that reflect a late or missed break, as such records shed no light on the dispositive question of ***why*** a break was late, short or missed—*i.e.*, whether the employee was denied a ***reasonable opportunity*** for a proper break. *See, e.g.*, *Ordonez v. Radio Shack, Inc.*, No. CV 10-7060-CAS-JCGX, 2013 WL 210223, at *7 (C.D. Cal. Jan. 17, 2013) *("late, short, or missed" breaks are not violations absent proof that employee lacked reasonable opportunity for compliant break)*; *Silva v. AvalonBay Cmtys., Inc.*, No. LA CV15-04157, 2016 WL 4251600, at *10 (C.D. Cal. Apr. 20, 2016) ("[*Brinker*] makes significant the issue of why an employee did not [take a break].").

Rather, to survive summary judgment, Plaintiffs must provide evidence of specific late or missed breaks for which TWC failed to *both*: (1) provide the reasonable opportunity for a proper break; and (2) pay the proper meal penalty despite being aware that Plaintiff lacked a reasonable opportunity to take a timely or otherwise proper break. Plaintiffs cannot make this showing, as uncontroverted facts – including their own admissions – prove that: (1) TWC provided Plaintiffs the reasonable opportunity for proper, timely breaks, even if Plaintiffs did not always avail themselves of the opportunity to timely take them; and (2) Plaintiffs cannot provide evidence of any instance where they did not have a reasonable opportunity for a proper break **and** TWC failed to pay the appropriate premium in accordance with its undisputed policy.

**2. *Undisputed Facts Show TWC Met Its Obligation to Provide a Reasonable Opportunity for Timely and Proper Meal and Rest Breaks***

As shown in Section II(C) above, it is undisputed that:

- TWC properly and timely scheduled all meal and rest breaks for Plaintiffs;
- TWC facilitated timely breaks by providing a phone system that allowed dispatchers to enter the "break" or "lunch" auxiliary code to prevent further calls from coming as the scheduled break approached;
- TWC required dispatchers, including Plaintiffs, to enter the break or lunch code into the phone system as their breaks approached;
- TWC created financial incentives for timely breaks via its bonus system;
- TWC had "strict" policies requiring compliance with the break schedules, and management issued a "directive" that dispatchers comply with their schedules;
- TWC enforced its lawful meal/break policies not only by monitoring Plaintiffs' adherence to their schedule, but also by directing them to take their breaks if they hadn't done so, and formally coaching them for repeated violations;
- TWC required that Plaintiffs take their breaks outside of the dispatch area to ensure that no work could be performed during breaks;
- When TWC is aware that an employee has been deprived of the opportunity to take a timely or otherwise proper break, TWC pays that employee a break "premium" or "penalty" -- one-hour of additional pay.

(SUF ¶¶ 13-61.) Thus, there is no question that TWC's takes its meal and rest break obligations seriously, and went to great lengths to enforce its lawful policies and ensure that Plaintiffs had a reasonable opportunity to take timely and proper breaks. As further shown above, there is also no question that TWC's efforts are successful, as it is undisputed that Plaintiffs not only took their meal and rest breaks, they spent significantly more time on such breaks than is mandated by law, and in many instances much more time than that for which they were scheduled. (SUF ¶¶ 19-22.)

### 3. *Plaintiffs' "Heavy Call Volume" Theory Cannot Create a Genuine Dispute of Fact*

To the extent Plaintiffs argue that TWC's "heavy call volume" sometimes caused them to take untimely breaks, that argument cannot raise a genuine issue of fact for several reasons. As an initial matter, accepting that argument would swallow the reasonable opportunity standard, as many work places are busy and any employee in any such workplace could survive summary judgment merely by claiming that – even though he actually took his breaks, as did Plaintiffs here – he was too busy to take them on time. That is not the law, as it would require employers to police breaks – a requirement *Brinker* expressly rejected. *Brinker,* 53 Cal. 4th at 1040.

Moreover, any argument that "heavy call volume" left Plaintiffs too busy to take their rest breaks on time is an excuse that – in and of itself – destroys Plaintiffs' rest break theory. As noted above, the requirement that rest breaks be taken approximately in the middle of a work period is qualified by the phrase "insofar as practicable." *Id.* at 1031. Accordingly, employers "may deviate from that preferred course where practical considerations render it infeasible." *Id.* Thus, ***Plaintiffs' assertion that they were too busy to take rest breaks that TWC properly scheduled for the middle of a work period is an admission that it was not feasible to take the break at that time***. Plaintiffs' rest break claims fail on that basis alone.

More importantly, the generalized "heavy call volume" excuse is not a valid excuse under the facts presented here, as it is undisputed that TWC implemented substantial measures to ensure timely breaks, and ***every Plaintiff admits he or she was told to comply with their break schedule***, busy or not. (SUF ¶ 23.) This mandate was neither hollow nor equivocal, as TWC enforced it by reminding Plaintiffs to take breaks when they were delayed, formally coaching Plaintiffs for failure to adhere to their schedules, utilizing a phone system that allowed them to stop receiving calls as their break approached, and creating monetary incentives to comply. (SUF ¶¶ 14-18, 16-17, 22-23.) Despite this mandate and the measures TWC implemented to facilitate and

enforce it, Plaintiffs ignored instructions to take breaks or otherwise engaged in practices that resulted in them failing to take advantage of the reasonable opportunity TWC provided them for a timely break. (SUF ¶¶ 24-26, 28-57.) Indeed, it defies logic for Plaintiffs to argue that an employee is deprived of a reasonable opportunity to take a break when a supervisor tells him "take your break," but the employee instead chooses to keep working. The meal/rest break claims of *each Plaintiff* suffer from this fatal flaw, and thus fail as a matter of law.

Additionally, Plaintiffs' argument that they can create a genuine dispute of fact with generalized assertions of a busy workplace fails for other reasons particular to various Plaintiffs. For example, Nichols and Gutierrez admit they chose to delay breaks until *they decided, based on their own evaluation*, that the floor was sufficiently "covered" -- despite their knowledge that responsibility for "coverage" was not their job. (SUF ¶¶ 24, 47-48.) Gilmore did likewise, as she defied her supervisor's express instructions to take her break when Gilmore believed the volume of calls in the pool was too high. (SUF ¶ 33.) Plaintiffs cannot manufacture break liability by substituting their own judgment as to when to take a break for that of management. Indeed, these Plaintiffs obviously had the *opportunity* to take a proper break in accordance with TWC's policies and their schedules, they simply chose to do otherwise and, in so doing, usurped their supervisors' authority over scheduling.

Likewise, Plaintiffs cannot manufacture liability by taking noncompliant breaks due to their own inefficiency, mismanagement and/or poor work habits. Indeed, Plaintiffs' "heavy call volume made me unable to take timely breaks" theory rings hollow when Manigo was coached to:

- Stop using her personal phone during work time;
- Stop surfing the internet during work time;
- Minimize her "playing around";
- Minimize her "talking to others,"
- Make better use of her downtime; and

- Better manage her breaks and phone effectively.

(SUF ¶¶ 34-41.)

The same is true of Valladares-Gallegos, who was coached to:

- Better manage her phone and break time;
- Stop mismanaging her time by playing games on her cell phone;
- Stop helping her husband rather than tending to her own team.

(SUF ¶¶ 49-54.) Obviously, with proper diligence and less "playing around," the allegedly "heavy call volume" would not have been a problem for Plaintiffs and they could have better managed their breaks – exactly as they were coached to do.

As other federal courts have consistently held, undisputed facts such as those above preclude Plaintiffs from showing any genuine dispute of fact as to whether TWC provided them the reasonable opportunity for timely and otherwise proper meal and rest breaks. *See, e.g., Cleveland v. Groceryworks.com. LLC*, 200 F. Supp. 3d 924, 946 (N.D. Cal. 2016) ("[C]ourts have not hesitated to grant summary judgment where plaintiffs have skipped breaks of their own accord due to pressure they feel to complete their job in a given amount of time, absent evidence that their employer took action to prevent or impede employees from taking their meal or rest breaks."); *Cole v. CRST. Inc.*, No. 08-cv-1570-VAP-SP, 2017 WL 1234215, at *7 (C.D. Cal. Mar. 30, 2017) ("At most, the evidence suggests that, despite Defendant's policy of allowing breaks, Plaintiff subjectively believed that [s]he should not take breaks.... Plaintiff's uncorroborated subjective beliefs about [her] former employer's break policies are insufficient to create a material dispute of fact as to whether the employer's actual policy is to discourage breaks."); *Novoa v. Charter Commc'ns,* 100 F. Supp. 3d 1013 (E.D. Cal. 2015) (granting summary judgment because evidence showed plaintiff voluntarily delayed breaks in violation of employer's policy); *Plaisted v. Dress Barn Inc.*, No. 2:12-cv-01679-ODW, 2013 WL 300913, at *3–4 (C.D. Cal. Jan. 25, 2013) (employee's assertion "that she essentially had too much work to do in too little time, and that pressure somehow necessitated her to work through her rest or meal breaks"

not sufficient to create genuine issue of material fact); *Reece,* 2013 WL 245452 at *6 (granting summary judgment when employee contended he could not take breaks due to "demanding schedule," "sheer volume" of work, and "expectations placed on him"); *Carrasco v. C.H. Robinson Worldwide. Inc.,* No. 1:13-cv-01438-LJO, 2013 WL 6198944, at *9–10 (E.D. Cal. Nov. 27, 2013) ("Plaintiff has not identified any 'pressuring' by [defendant] that coerced Plaintiff to perform her duties in ways that omit breaks. Liability for failure to provide meal breaks and rest breaks is premised on the employer's actions, and not necessarily the employee's actions. Plaintiff's complaint does not identify any actions by Defendants that would give rise to liability."); *Perez v. Safety-Kleen Systems, Inc.,* 253 F.R.D. 508, 515 (N.D. Cal. 2008) (claim that job demands made it impossible to take meal breaks insufficient to establish violation as "There is no authority for the proposition that an employer is liable for failing to provide meal breaks simply because an employee chooses to forego a meal break in order to complete his or her work, absent evidence of a specific employer policy or practice of discouraging breaks.").

Indeed, to allow Plaintiffs to reach a jury under the above circumstances would defy the teachings of *Brinker* by imposing the very break "policing" requirement that *Brinker* expressly rejected. In fact, given TWC's lawful policies and extensive efforts to enforce same, allowing Plaintiffs to proceed to a jury here would suggest that employers must physically drag employees away from their work stations to avoid the prospect of a trial on meal/rest break liability. Further, to find a genuine dispute of fact where, as here, Plaintiffs defied TWC's lawful mandates and ignored its enforcement efforts would fly in the face of *Brinker's* admonition that "employees cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate such liability." *Brinker,* 53 Cal. 4th at 1040; *see also White v. Starbucks Corp.,* 497 F. Supp. 2d 1080, 1089 (N.D. Cal. 2007) (noting that employees should not be permitted "to manipulate the process and manufacture claims by skipping breaks or taking breaks of few than 30 minutes . . . . This cannot have been the intent of the

California Legislature, and the court declines to find a rule that would create such perverse and incoherent incentives.") Thus, Plaintiffs' meal and rest break claims fails as a matter of law, as there is no genuine dispute of fact that TWC provided Plaintiffs with a reasonable opportunity for timely and otherwise proper meal and rest breaks.

**4. *TWC's Payment of Premiums Where the Opportunity For a Timely Break Was Not Provided Defeats All of Plaintiffs' Arguments***

a. <u>There is No Evidence of Any Occasion Where a Plaintiff Lacked an Opportunity for a Proper Break, But Did Not Receive the Premium</u>

No argument Plaintiffs could advance would create a genuine issue of fact as to their meal and rest break claims given the undisputed fact that TWC's policy is to pay the appropriate meal/rest break premium when an employee has been denied the opportunity to take a timely break. (SUF ¶¶ 58-60.) Indeed, it is undisputed that TWC's Kronos system was programmed to *automatically* add the premium when a dispatcher commenced lunch after more than five hours of work, *regardless of whether the dispatcher had the opportunity to take a timely break*. Moreover, in keeping with TWC's policy and practice to pay the premium, it is also undisputed that TWC paid its El Segundo dispatchers -- including Plaintiffs -- more than *1500* break premiums during the relevant period. (SUF ¶ 59.) Accordingly, there is no question that TWC vigorously enforces its policy of paying the premium where there is no opportunity for a timely or otherwise proper break.

Given these facts, it is not surprising that *Plaintiffs cannot meet their burden to identify any instance where they lacked the opportunity for a timely break -- because of heavy call volume, long phone calls or otherwise -- yet TWC did not pay them the*

*premium.*[62] Summary judgment is proper on Plaintiffs' break claims for this reason.

b. There is No Evidence that any Plaintiff Complied With the Obligation to Report a Break Violation, But Still Did Not Receive the Premium

Even if Plaintiffs could identify particular instances where they lacked a reasonable opportunity for a break but did not receive the premium, summary judgment would still be required, as there is no evidence that TWC ever failed to pay the premium after a Plaintiff properly reported that break violation to management.

That is, where, as here, an employee is obligated to inform the company when he lacks the opportunity for a proper break, there can be no liability absent proof that the employee actually reported the violation **and** the employer failed to pay the premium. *See, e.g, Amey v. Cinemark USA Inc.,* No. 13-cv-05669, 2015 WL 2251504, at *10 (N.D. Cal. May 13, 2015) (noting, in context of class certification motion, importance of testimony indicating that some putative class members "testified that they did not inform management of the fact that they had missed meal and/or rest breaks"); *Porch,* 685 F. Supp. 2d at 1073-74 (granting summary judgment where plaintiff never reported missing meal break to supervisor); *Palazzolo v. Childrens Hosp. Los Angeles,* No. B216508, 2010 WL 4869755, at *6 (Cal. Ct. App. Dec. 1, 2010) (rest break claim failed as matter of law where employee was instructed to report missed breaks but failed to do so).

Here, it is undisputed that Plaintiffs were supposed to report break violations to management. (SUF ¶ 61.) There is no evidence whatsoever of any instance where a

---

[62] To the extent Plaintiffs assert that long phone calls prevent timely breaks, that argument does not create a genuine issue as to liability. As an initial matter, TWC typically schedules lunch breaks at least 15 minutes prior to the start of the sixth hour of work, and the phone system allowed dispatchers to enter a break code to prevent new calls from coming in. (SUF ¶¶ 13-14.) Thus, only an unusually long call received just before a break could prevent a timely break. More importantly, undisputed facts prove that when this occurs, TWC pays the appropriate premium. (SUF ¶¶ 58-61.)

Plaintiff reported a break violation, but TWC refused to pay the premium. Thus, because there is no evidence of any noncompliant break where TWC failed to pay any of the Plaintiffs the appropriate premium, Plaintiffs meal and rest period claims fail as a matter of law.[63]

**D. Plaintiffs' Derivative Claims Fail**

Plaintiffs have admitted that their remaining claims are entirely derivative of their underlying claims for meal and rest break violations and unpaid overtime. (D.E. 49 at 9:15-10:24.) Because those underlying claims fail as a matter of law for the reasons set forth above, all of Plaintiffs' derivative claims, including their PAGA claim, also fail. *See*, e.g., *Rodriguez v. Old Dominion Freight Line, Inc.*, Case No. 13–cv–891–DSF–RZX, 2013 WL 6184432, at *8 (C.D. Cal. Nov. 27, 2013) ("As those claims have all been dismissed, they cannot serve as the basis of Plaintiffs' PAGA claim"); *Jones v. Spherion Staffing LLC*, No. LA CV11-0642 JAK, 2012 WL 3264081 at *10 (C.D. Cal. Aug. 7, 2012); *Jasper v. C.R. England, Inc.,* Case No. 08–cv–5266–GW–CWX, 2012 WL 7051321, at *9 (C.D. Cal. Aug. 30, 2012).

**E. Plaintiffs' PAGA Claim Also Fails on Procedural Ground**

Plaintiffs' PAGA claim fails as a matter of law not only because it is derivative of the failed overtime and break claims, but also on procedural grounds for two independent reasons. First, Plaintiffs failed to comply with the statutory requirement that they *electronically file* their PAGA letter with the LWDA. Cal. Labor Code § 2699.3 (a)(1)(A). Rather, as shown on the face of Plaintiffs' PAGA letter and expressly alleged in Paragraph 88 of their Complaint, they sent it to the LWDA only via certified mail. (Compl. ¶ 88.) Second, the PAGA provides that plaintiffs cannot file suit until 60 days

---

[63] In fact, given the undisputed facts regarding TWC's policy to pay the premium, the steps it has taken to enforce that policy, and the 1518 premiums paid in the El Segundo dispatch center alone, it defies logic to think that TWC would arbitrarily refuse to pay a premium when an employee properly reported a break violation.

after they have filed their PAGA letter with the LWDA. Cal. Labor Code § 2699.3 (a)(2)(A). Here, as shown by the face of the Complaint and Plaintiffs' PAGA letter, Plaintiffs filed their complaint a mere two days after mailing their PAGA letter to the LWDA, and failed to allege that the LWDA has given notice that it does not intend to investigate or that the LWDA has not acted. (SUF ¶ 62.)[64]

Because Plaintiffs failed to comply with PAGA's statutory prerequisites to suit, their PAGA claim fails as a matter of law. *Raphael v. Tesoro Refining and Mktg, Co. LLC,* No.2:15-cv-02862, 2015 WL 5680310, at *3 (C.D. Cal. Sept. 25, 2015) ("The statute explicitly provides that one must complete this exhaustion prior to filing suit. . . Failure to comply with these statutory perquisites is fatal to a PAGA cause of action."); *Soto v. Castlerock Farming and Transp. Inc.,* No. CIV-F-09-0701 AWI JLT, 2012 WL 1292519, at * 4 (E.D. Cal. Arp. 16, 2012) ("The complaining employee may only file suit after the LWDA gives notice that it has decided not to investigate or cite the employer for the alleged violations (or if the LWDA does not act within certain time deadlines. . . These administrative procedures must be exhausted before the civil suit may proceed")); *Caliber Bodyworks, Inc. v. Super. Court,* 134 Cal. App. 4th 365, 382-83, 36 Cal. Rptr. 3d 31, 43-44 (2005) (issuing writ of mandate requiring trial court to dismiss PAGA claim without leave to amend for failure to plead compliance with PAGA's exhaustion requirements).

## IV. CONCLUSION

For the above-stated reasons, TWC respectfully requests that the Court grant its motion for summary judgment in its entirety, as to each Plaintiff.

---

[64] Specifically, Plaintiffs' mailed their PAGA letter on June 28, 2016, and filed this lawsuit on June 30, 2016. (SUF ¶ 62.)

Dated: August 28, 2017

KABAT CHAPMAN & OZMER LLP

By: */s/ Joseph W. Ozmer II*

J. SCOTT CARR
JOSEPH W. OZMER II
*Attorneys for TWC Time Warner Cable Inc. and TWC Administration LLC*